## Hall *v.* Harriet Browder's Administrators.

A demurrer to evidence with joinder therein, is an issue in law, and it was held to be
error where the court overruled the demurrer, and awarded a jury trial.

It is a well established principle of law, that upon the termination of a life estate, or free-
hold, held by the husband *jure uxoris,* the emblements growing upon the land vest
in the husband or his representatives.

ERROR to the Circuit Court of Wilkinson county.

This was an action of trover, instituted in 1831, by John F. Car-
michael, as administrator *de bonis non,* of Harriet Browder, to re-
cover damages for the conversion of thirty-four bales of cotton.

There was a marriage agreement entered into between said
Harriet and her husband, previous to their marriage. Both par-
ties possessed plantations, slaves and stocks, previous to their mar-
riage. By this agreement it was stipulated, that each party should
possess and enjoy their respective property, and that the property
of the said Harriet should not be subject to the marital rights of
Browder. It was further provided, that Browder should, during
the marriage, have management and control of the plantations,
slaves, &c. and that he or his heirs should not be accountable to
the said Harriet or her heirs for any part or portion of the annual
increase or profits of the land and slaves, it being supposed and
intended that any surplus that may exist after the necessary family
disbursements, will be appropriated in the acquisition of property
during the marriage. The agreement further provided that "as
to any property acquired during the marriage, the ownership of
the same and the marital rights of the parties therein, and the dis-
tribution thereof at the dissolution of the marriage, shall follow
and be made according to the laws of the state, wherein the same
shall be possessed."

In pursuance of this agreement, F. A. Browder had, from 1826
to 1830, possessed and cultivated the plantations belonging to his
wife, and received the proceeds. In 1830 Mrs. Browder died.
The crop then growing was gathered by Browder, and he sent it

all to market, with the exception of the thirty bales sued for in this action, which were then stored in the warehouse of Hall, the plaintiff in error. Browder then died, and the administrator *de bonis non* of Mrs. Browder, demanded the cotton of Hall, as unadministered effects belonging to the estate of Mrs. Browder. One Wood administered upon the estate of F. A. Browder, and also demanded the cotton of the defendant, Hall, to whom Hall delivered it. Browder had been the administrator of his wife, but claimed the cotton in his own right. The quality and value of the cotton were proved on the trial.

The foregoing facts, together with the marriage contract, embrace the substance of the evidence offered on the trial. The defendant demurred to it generally as insufficient to entitle the plaintiff to recover. The court overruled the demurrer, the plaintiff took a general verdict, the jury assessing the damages at eight hundred and fifty-six dollars and costs.

Exceptions were taken to the opinion of the court overruling the demurrer. The proceedings are assigned for error.

Henderson for plaintiff in error.

The whole merit of this case depends upon the construction of the marriage contract. In other words, if by the marriage agreement F. A. Browder had such right and interest in the wife's estate, or the usufruct of the wife's estate, as to be entitled to the benefit of *emblements*, then the demurrer below should have been sustained.

If this cotton was "any other property of the parties except as in the agreement above described," then, according to the marriage agreement, the demurrer should have been sustained, because the cotton was the husband's by marital right, according to the law of the state of Mississippi.

If this cotton was a product or personal property, so peculiarly resulting as not to have been contemplated or provided for by the marriage agreement at all, then it surely became the husband's by marital right as entitled to the usufruct of the wife's real estate during his and her life, and she first dying, then to *emblements* for the year of her death. 2 Kent's Com. 110, 111. 2 Black. Com. 122, 123.

The marriage contract presents these distinctive divisions.

1. Its preamble recites generally the property, and kinds of property of which each is possessed, and where situated, the intended place of residence, and that each intend each shall "remain" "owner and proprietor" of the property so enumerated, and to each respectively belonging, subject to the limitations "hereinafter mentioned."

2. Passing over Mrs. Hook's stipulation as to Browder's estate, the agreement next provides and stipulates that the lands, plantation, slaves, &c. "now belonging," &c. and the personal property as furniture, plate, &c. "now" appertaining, and in "use" on said plantations, &c. the property of Mrs. Hook, shall be settled upon and secured to her, and not subject to the marital rights of Browder "as regards the right of property therein," except during marriage, he shall have the management and control of the plantation, slaves, &c. without accountability for the "annual income or profits" of the same.

Now here let me inquire, if there had been no marriage agreement between the parties, what would have been Browder's rights in the lands of his wife? Would he have acquired a "right of property" in the lands? No! But he would have had the use, management and control of them during marriage, without accountability. The marriage agreement then exempts the lands of the wife from the marital rights of Browder, only so far as "regards the rights of property;" but their use, &c. is expressly given him, without accountability.

This then leaves the landed estate of the wife precisely where the law secured it, without a marriage agreement. To ascertain the husband's interest then, see 2 Kent's Com. 110, 111. 2 Jac. Dict. 375. 1 Cr. Dig. p. 80, sec. 23–4–5.

As an estate for life is but the use of land for life, and not the *proprietas,* so a use of land for life, is an estate for life in the land. 1 Cr. Dig. 76, sec. 1. The language of the agreement then concedes to Browder in effect a life estate. 3 Bac. Ab. Tit. Extr. & Admr. p. 64. And as of the land, so of the personalty; so far as depends on the agreement. "By a devise of rents, profits, and income of land, the land" "itself passes." 1 Armistead's Rep. 242. (11 A. Jun. 146.)

Wherefore I consider there is no doubt but that Browder and his executor are entitled to *emblements.*

3. The third division of the agreement contemplates all other property of the parties " except as above described," which would embrace money on hand, money due, funds in stocks, &c.; all such belonging to Mrs. Hook became Browder's by marriage.

Also, all *other* property acquired during the marriage, (except such as might be devised to Mrs. Browder, by will, deed of gift, or in any other way, from her mother, or any other person,) should be subject to the *jus mariti,* in its disposal, according to the laws of the state, where the same shall be owned and possessed at the dissolution of marriage. ·

Now if the cotton crop in controversy, was not *specially* secured to Browder under the second head of the agreement, it must (if language is sufficiently comprehensible to effect such an object,) be fully embraced and secured him by this. If this cotton was not of the annual income and profits of Mrs. Browder's land and slaves, which Browder was entitled to receive without accountability, then, as it was property in existence during the coverture, viz: a growing crop, which is a chattel, it must surely be included in the description of "any other property of the parties, except as above described," or, as "property acquired during the marriage." If it be any of these, the property was F. A. Browder's, and our demurrer should have been sustained.

Winchester, *contra.*

Mr. Justice SMITH delivered the opinion of the court.

This was an action of *trover* instituted by Jno. F. Carmichael, as administrator *de bonis non* of Harriet Browder, deceased, in the circuit court of Wilkinson county, to recover damages for the conversion of thirty-four bales of cotton.

Christopher E. Hall, who is the appellant in this court, and who was the defendant in the suit below, filed his demurrer to the evidence adduced by the plaintiff on the trial in support of his demand, and the facts established by this evidence are stated and admitted upon the record. Upon the demurrer to the evidence there was joinder by plaintiff, and a decision of the court overruling the same. After which decision, the cause was submitted to the jury upon

the evidence thus demurred to; who, having found for the plaintiff the amount of damages sustained by him by reason of the conversion, judgment final was entered for the amount of the verdict.

From this decision and judgment of the court the defendant has appealed, and insists before this court that there was error in the proceeding below, in the following particulars, to wit:

1. That there was error in submitting the cause to a jury upon the evidence, after overruling the demurrer; whereas the court ought to have pronounced a final judgment upon the demurrer. And 2. That there was error in overruling the demurrer to the evidence offered at the trial.

To test the correctness of the first proposition it is necessary to inquire into the object and effect of a demurrer to evidence.

A demurrer in law is the tender of an issue in law, upon the facts which have been established by the pleadings, and a demurrer to the evidence is a tender of an issue in law upon the facts established by the evidence, and by necessity involves the admission of the truth of the facts intended to be proved by the evidence. The object of a demurrer to evidence then, is to raise the question of the relevancy, or the sufficiency in law of the facts intended to be proved, and by it admitted to be true, to maintain the issue in favor of the adverse party. This proceeding exchanges the issue in fact, which is made up and closed to the jury, to an issue in law, and transfers it to the court.

It is the peculiar province of the jury, to decide upon the weight of the evidence, in reference to the facts put in issue by the pleadings; but the necessary incidents of a demurrer to evidence supercedes this office of the jury, and makes the determination of the issue in fact, dependant upon the decision of the question of law. It follows, therefore, as the inevitable effect of a demurrer to evidence, to which there is a joindure, that the jury are discharged from the further consideration of the issue submitted in the first instance to them. The court, therefore, erred in not rendering judgment on the demurrer, and awarding a writ of enquiry to assess the damages, consequent upon the trover and conversion, instead of submitting the cause in chief to a jury.

2d. The question of the relevancy, or of the conclusiveness of the facts to maintain the affirmative of the issue, being the only

[Hall v. Harriet Browder's Administrators.]

point presented to the consideration of the court, it will be necessary only to examine into the legal construction of the marriage contract between Browder and wife, as it will not be disputed that the appellee's intestate possessed a life estate in the property devised to her in Butler's will.

It was the expressed intention of the parties to that contract, that the property owned by each at the time of making and entering into the same, should be reserved to each in separate right, unaffected so far as the ownership was involved, by the marital rights, which otherwise would have attached upon the consummation of the marriage.

By a stipulation of the marriage contract it is provided, "that as to any property acquired during the marriage, the ownership of the same and the mutual rights of the parties therein and the distribution thereof at the dissolution of the marriage, shall follow and be made according to the laws of the state, wherein the same shall be possessed," &c. and it is further contracted "that the said Frederic A. Browder or his heirs shall not be accountable to the said Harriet, or her heirs, for any part or portion of the annual income or profits of the lands and slaves of the said Harriet, it being supposed and intended that any surplus that may exist after the necessary family disbursements, will be appropriated in the acquisition of property during the marriage."

Had there been no marriage agreement entered into by Browder and Mrs. Hook, Browder would, by the marriage, have acquired an absolute right to all of her personal property in possession, and a right to the usufruct of her lands: that is, to a life estate therein for her life, in case he survived her, unless there had been issue capable of inheriting, then to a life estate for his own life. But the lands as well as the personalty, a portion of the annual income of which forms the subject matter of controversy, was devised to her by the will of Butler, which vested in her only a life interest. To these lands, then, aside from the marriage contract, Browder would have acquired only a life estate for his own life, in case she survived him; and for her life, if he should be the survivor by their marriage. So far, then, as it regards the annual income or profits of Mrs. Browder's lands, his marital rights are

20

[Hall *v.* Harriet Browder's Administrators.]

left by the contract, as by the laws of the land, they would have been independent of it.

Mrs. Browder died on the 11th of July, 1830; of course after the crop of cotton for that year had been planted, and as admitted, before it was gathered. The thirty-four bales of cotton alleged to have been converted by the appellant, were a part of the crop growing on the Woodstock place, at the time of her death. The question then is simply this, whether the right to the emblements vested in Browder who survived his wife, or in her personal representatives? It is a universal principle of law, that upon the determination of a life estate, or freehold held by the husband *jure uxoris;* the emblements growing upon the land vests in the husband or his representatives. See Kent. Com. p. 111.

But it may be contended that as the marriage agreement prevented the marital rights of Browder from attaching to his wife's property, that therefore, he could not have a freehold estate in her lands, and that therefore he could not claim the emblements growing upon the land. But admitting that the agreement did not vest in Browder a freehold estate for the life of his wife, yet he is clearly entitled to the growing crop as the " annual income or profits" of the land, by the terms of the agreement, if Mrs. Browder's representatives would have been entitled to it, had no marriage intervened; and of this there cannot be a question.

We are, therefore, compelled, after the most diligent investigation, which we have been enabled to give the subject, to believe that the evidence offered by the plaintiff below, and appearing upon the record before us, was not sufficient in law to enable the plaintiff to recover.

The judgment of the circuit court is therefore reversed, and judgment final will be given for the appellant upon the demurrer.

[NOTE.—This cause was decided in 1835.]